IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:11-CV-132-FL

| | |
|---|---|
| RONALD D. DUNN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the Court upon the parties' cross Motions for Judgment on the Pleadings. (DE's-14 & 24). Plaintiff has filed a response (DE-26), and the time for filing any further responses or replies has expired. Accordingly, these motions are now ripe for adjudication. Pursuant to 28 U.S.C. § 636(b)(1), these motions have been referred to the undersigned for the entry of a Memorandum and Recommendation. For the following reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-14) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-24) be GRANTED, and that the final decision by Defendant be AFFIRMED.

**Statement of the Case**

Plaintiff applied for disability insurance benefits ("DIB") on March 11, 2004, alleging that he became unable to work on December 6, 2003. (Tr. 23, 228). This application was denied initially and upon reconsideration. *Id.* A hearing was held before an Administrative Law Judge

1

("ALJ"), who determined that Plaintiff was not disabled during the relevant time period in a decision dated June 12, 2006. *Id.* at 9-15. The Social Security Administration's Office of Hearings and Appeals ("Appeals Council") denied Plaintiff's request for review on August 30, 2006. *Id.* at 3. Upon appeal to this Court, Plaintiff's claim was remanded for further administrative proceedings on March 22, 2007. *Id.* at 241. *See also*, <u>Dunn v. Astrue</u>, 7:06-CV-142-BO. Plaintiff's claim was again denied in a decision dated May 9, 2008. (Tr. 228-238). The Appeals Council denied Plaintiff's request for review on May 2, 2011, rendering the ALJ's determination as Defendant's final decision. *Id.* at 212-214. Plaintiff filed the instant action on June 27, 2011. (DE-5).

**<u>Standard of Review</u>**

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...

42 U.S.C. § 405(g).

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Laws v. Celebrezze</u>, 368

2

F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, . . . [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute . . . [its] judgment for that of the Secretary." Craig, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

**Analysis**

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process that must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).
>
> Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001).

In the instant action, the ALJ employed the sequential evaluation. First, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 6, 2003. (Tr. 230). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: 1) lumbar degenerative disc disease; 2) hypertension; 3) a history of a fissure in

3

ano; 4) a history of anemia; and 5) hepatitis C.  *Id.* at 231.   However, the ALJ determined that these impairments were not severe enough to meet or medically equal one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1.  *Id*.  at 231-232.   Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain restrictions.  *Id.* at 232. The ALJ then determined that Plaintiff was unable to perform his past relevant work.  *Id.* at 236-237.   However, based upon the testimony of a vocational expert the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  *Id*. at 237-238.   Accordingly, the ALJ determined that Plaintiff was not under a disability during the relevant time period.  *Id.* at 238.

The ALJ's findings were supported by substantial evidence.  Plaintiff's argument relies primarily on the contention that the ALJ improperly weighed the evidence.   However, this Court must uphold Defendant's final decision if it is supported by substantial evidence.  Although Plaintiff may disagree with the determinations made by the ALJ after weighing the relevant factors, the role of this Court is not to undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary.  Craig, 76 F.3d at 589. Because that is what Plaintiff requests this Court do, his claims are without merit.   The undersigned will nonetheless discuss Plaintiff's individual assignments of error.

**The ALJ properly assessed Plaintiff's credibility and RFC**

Plaintiff argues that the ALJ "improperly evaluated [Plaintiff's] credibility and the medical record which resulted in an RFC finding which is not supported by substantial evidence." (DE-17, pg. 9).  The undersigned disagrees.  First, this assignment of error asks the undersigned to re-weigh the evidence before the ALJ.  As noted above, such a request is without merit.

4

Regardless, Plaintiff contends that the ALJ incorrectly assessed his credibility. "Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Ultimately, the ALJ's findings with regard to a claimant's credibility must "contain specific reasons . . . supported by evidence in the case record." SSR 96-7p, 1996 WL 374186, * 2.

During the hearing in this matter, Plaintiff testified that he was "unable to stand a considerable amount of time . . . [m]aybe 15, 20 minutes . . ." (Tr. 513.). Likewise, Plaintiff indicated that he could lift no more than 10 or 15 pounds. *Id.* He also noted that he suffers from numbness in his back, legs, fingers and head. *Id.* Plaintiff indicated that he could not sit longer than 45 minutes at a time, and that he could walk no further than 100 yards without experiencing chest pains and shortness of breath. *Id.* at 514. According to Plaintiff, he stays off his feet "mostly all day." *Id.* at 515. Furthermore, Plaintiff stated that his "back is constantly hurting all day long." *Id.* at 516. He could not remember the last night he had slept well. *Id.* at 517. Plaintiff testified that he no longer took narcotic medication for his pain because he "once was a drug addict, . . . [and the narcotics] were becoming habit-forming to [him]." *Id.* at 522. He now uses over-the-counter medicine to relieve his pain. *Id.* at 525.

With regard to Plaintiff's credibility and RFC, the ALJ made the following findings:

> claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), sitting up to six hours and standing and walking up to six hours in an eight hour work day, with the need to alternate sitting and standing positions every 30 minutes, lifting and carrying and pushing and pulling up to 20 pounds occasionally and ten pounds frequently, occasionally balancing and climbing, and occasionally stooping, crouching, kneeling and crawling . . .

5

In making this finding, the undersigned Administrative Law Judge has evaluated all of the claimant's symptoms, including pain . . .

[A]lthough the evidence shows that the claimant has a medically determinable impairment that could reasonably be expected to produce the pain and other symptoms alleged, the evidence does not support the claimant's allegations of the intensity and persistence of such pain and other symptoms. Specifically, the claimant testified he is unable to work due to back pain, numbness in his back, legs, fingers and the back of his head, chest pain, shortness of breath, and dizziness. As a result of the pain he experiences, the claimant testified he cannot stand more than 20 minutes, lift more than 15 pounds, walk more than 100 yards, or sit more than 45 minutes at one time. The claimant also testified he has difficulty sleeping due to pain and the need to use the bathroom. Medications for the claimant were reported as taking medication for iron deficiency and anemia, for hepatitis C, for depression, and for hypertension, with over-the-counter medication noted for pain. Daily activities for the claimant were reported as studying his Bible for several hours each day, driving four miles to the post office, watching television, resting, walking around outside his house, attending church and visiting with his sister.

While it is recognized that claimant experiences some degree of pain and discomfort, the evidence does not support the finding of disabling pain. The claimant testified he takes only over-the-counter medication for pain relief. If he were experiencing severe, intractable pain, it is reasonable to assume he would report this information to his physician and he would be prescribed appropriate pain medication. The claimant has not required the use of aggressive methods for symptom relief including steroid medication, epidural injections, the use of TENS equipment, or enrollment in a pain management program or in physical therapy. Neither has surgical intervention been recommended for the claimant. The claimant's daily activities do not show he leads an entirely sedentary lifestyle due to pain, as he has sufficient concentration and stamina to do a Bible study several hours every day, drives to the post office, attends church weekly, visits with his sister and walks outside the house. The claimant's testimony as to side effects from medication does not show he has significant side effects as he reported his medication for depression makes him restless and irritable but the evidence from the Veteran's Administration shows the claimant has not been compliant with his medication. If the claimant were experiencing significant side effects from medication, it is reasonable to assume he would report this information to a physician and his medication would be altered or adjusted. For these reasons, the claimant's subjective allegations are not considered fully credible . . .

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible to the extent they are inconsistent with the residual functional capacity assessment.
>
> *Id.* at 232, 234-236

The ALJ's findings were supported by substantial evidence. For example, several neurological examinations of Plaintiff were "unremarkable." *Id.* at 132-138, 166.

On February 19, 2004, Plaintiff reported "dramatic improvement" of his "painful bleeding anal condition." *Id.* at 147. He was also "alert and comfortable" upon examination. *Id.*

Plaintiff's RFC was assessed by Dr. David Buchin on July 13, 2004. *Id.* at 158-165. It was determined that Plaintiff could: 1) occasionally lift 50 pounds; 2) frequently lift 25 pounds; and 3) stand, walk and/or sit about six hours in an eight hour workday. *Id.* at 159. Dr. Frank Virgili made similar findings on December 22, 2006. *Id.* at 312-319.

A November 10, 2004 MRI showed no focal herniated nucleus pulposus, with only diffuse disc bulging at L4-5 with facet hypertrophy and mild facet hypertrophy. *Id.* at 173.

Dr. Wesley Murfin examined Plaintiff on July 15, 2004. *Id.* at 155-156. Plaintiff had normal strength and full range of motion. *Id.* at 156. Ultimately, Dr. Murfin opined that Plaintiff's back pain "should not be significantly limiting." *Id.* Likewise, Dr. Murfin noted on December 21, 2006, that Plaintiff had normal strength. *Id.* at 310. He opined that Plaintiff was "able to sit, stand, . . . move about . . . lift, carry and handle light objects . . ." *Id.* Again, Dr. Murfin noted that he would not "expect [Plaintiff's condition] to be as severely limiting as he describes." *Id.* Finally, on November 8, 2007, Plaintiff again had normal strength. *Id.* at 490. According to Dr. Murfin, Plaintiff had "no significant findings on exam." *Id.* Plaintiff

7

demonstrated no evidence of neurologic impairment. *Id.* As before, Dr. Murfin opined that he would not expect Plaintiff's condition to be severely limiting. *Id.*

On October 30, 2006, it was noted that Plaintiff did not require back surgery based on his MRI results. *Id.* at 376.

The medical record indicates that Plaintiff's hepatitis C, anemia, and gastrointestinal problems were under control. *Id.* at 301, 391, 396 436-438.

Because the ALJ's RFC determination and credibility findings were supported by substantial evidence, this assignment of error is without merit.

**The ALJ properly weighed the opinions of Plaintiff's treating physicians**

Next, Plaintiff argues that the ALJ "essentially disregarded the opinions of [Plaintiff's] treating physicians, Dr. Williams, Dr. Ojebouboh . . . [and] Dr. Murfin." (DE-17, pg. 14, 17).

On April 8, 2004, Dr. Lennox G. Williams stated that Plaintiff's fissure in ano "was a painful condition which could also result in some ongoing bleeding." (Tr. 145). He also noted that the condition "would be expected to limit [Plaintiff's] ability to work, because of the pain" and that Plaintiff's "sitting [and] walking would be impaired." *Id.*

Dr. Ibikunle Ojebouboh stated on July 20, 2005 that Plaintiff "cannot work, because of limitations regarding prolonged standing, lifting and bending." *Id.* at 168. He further recommended that Plaintiff not stand for more than 20 minutes at a time or lift any weight beyond 20 pounds. *Id.*

Finally, Dr. Wesley Murfin stated on October 23, 2007 that, *inter alia*, Plaintiff could not stand for more than an hour in an eight hour workday. *Id.* at 492-498.

With regard to these opinions, the ALJ made the following findings:

> Dr. Williams treated the claimant for a fissure in ano and noted the claimant's ability to work was limited as a result of the pain he experienced. It was his opinion that claimant would be impaired in sitting and walking with no mental impairment other than pain and pain medication would inhibit sustained concentration. This opinion is not given great weight as the ano fissure was expected to be cured effectively by dietary management, according to Dr. Williams . . . Subsequent examinations show the ano fissure healed . . . Additionally, since the claimant testified he was not taking prescription pain medication, his ability to sustain concentration would not be significantly affected . . .
>
> Similarly, the opinion from Dr. Ojebouboh as to the claimant's restrictions . . . is not given great weight. Subsequent examinations of the claimant by Dr. Ojebouboh show that . . . he was in no apparent distress and neurological examination was normal and . . .. remained normal . . . With normal neurological findings, the conclusion as to such a restricted residual functional capacity is not supported. Additionally, Dr. Ojebouboh's diagnosis of radiculopathy is not borne out in his medical findings which do not show the claimant has difficulty with neurological testing, including walking. Neither has the claimant sought treatment with significant neurological complaints . . .
>
> [T]he restrictions in standing and walking are not supported by Dr. Murfin's clinical findings that the claimant had only a mild limitation in motion of the lumbar spine, and had the ability to squat and arise from a squatting position, walk on his heels and toes, and had normal strength in his legs . . . These findings do not support the restrictions as to standing and walking and are not given great weight.
>
> *Id.* at 235-236.

These specific findings were accompanied by a thorough review and assessment of the entire record. "The ALJ's assessment of this evidence provides a backdrop for the ALJ's evaluation of [these] opinion[s] and provides insight into [them]." Worden v. Astrue, 2012 WL 2919923, (E.D.N.C. May 29, 2012), *Report and Recommendation Adopted by*, Worden v. Astrue, 2012 WL 2920289 (E.D.N.C. July 17, 2012).

It is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. Wireman v. Barnhart, 2006 WL

9

2565245, * 8 (W.D.Va. September 5, 2006)(internal citations omitted). Furthermore, "while an ALJ may not reject medical evidence for no reason or the wrong reason . . .an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source . . . if he sufficiently explains his rationale and if the record supports his findings." *Id*. (internal citations omitted). While "the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). Rather, "a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Mastro, 270 F.3d at 178. Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. In sum, "an ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion." Koonce v. Apfel, 199 WL 7864, * 2 (4th Cir. 1999) (unpublished opinion)(internal citations omitted).

When the ALJ does not give the opinion of a treating physician controlling weight, he must weigh the opinion pursuant to the following non-exclusive list: 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship between the physician and the claimant; 3) the supportability of the physician's opinion; 4) the consistency of the opinion with the record; and 5) whether the physician is a specialist. 20 C.F.R. § 404.1527(d)(2)-(6). *See also*, Johnson v. Barnhart, 434 F.3d 650, 654 (4th

Cir. 2005). Moreover, the ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by substantial evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." S.S.R. 96–2p, 1996 WL 374188, at *5. *See also*, <u>Farrior v. Astrue</u>, 2011 WL 3157173, * 4 (E.D.N.C. June 1, 2011).

In his decision, the ALJ fully explained his reasoning in weighing the medical evidence. These reasons were supported by substantial evidence which in large part has already been summarized. In addition, the undersigned notes that Dr. Williams described Plaintiff's condition as "quite resolved" until Plaintiff discontinued his treatment regimen. *Id*. at 146. As noted above, Dr. Ojebouboh examined Plaintiff on several occasions and noted normal neurological function. *Id.* at 132-138, 166. Dr. Murfin frequently found Plaintiff to have normal strength and normal or near normal range of motion. *Id.* at 155-156, 310, 490-491. He also noted on several occasions that he would not expect Plaintiff's condition to be severely limiting. *Id.* For these reasons, this assignment of error is without merit.

**<u>The ALJ properly addressed the favorable disability determination of the VA</u>**

On September 22, 2005, the Department of Veterans Affairs ("VA") determined that, *inter alia*, Plaintiff was "unable to secure and follow a substantially gainful occupation due to disability." *Id.* at 49. The ALJ made the following findings with regard to the VA determination:

> In a September 22, 2005 rating decision from the Veterans Administration, the claimant was found entitled to a nonservice-connected pension . . . This determination was partially based on the statement from Dr. Ojebouboh that the claimant was unable to engage in prolonged standing, lifting and bending. However, as previously established, this conclusion from Dr. Ojebouboh is not given great weight by the Social Security Administration as it is not supported by the clinical findings noted by Dr. Ojebouboh.

11

> Pursuant to Regulation 404.1504, a determination by any other government agency concerning disability is based on that agency's rules and is not binding on the Social Security Administration. Thus, the determination from the Veteran's Administration is not dispositive of the issue of disability for the purposes of a period of disability and disability insurance benefits.
>
> *Id.* at 236.

Social Security Ruling 06-03p states:

> Our regulations at 20 CFR 404.1527(e) and 416.927(e) make clear that the final responsibility for deciding certain issues, such as whether you are disabled, is reserved to the Commissioner (see also SSR 96-5p, "Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner"). However, we are required to evaluate all the evidence in the case record that may have a bearing on our determination or decision of disability, including decisions by other governmental and nongovernmental agencies (20 CFR 404.1512(b)(5) and 416.912(b)(5)). Therefore, evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered.
>
> SSR 06-03-p.

Thus, while "other agency" decisions are not binding upon the Defendant, an ALJ should nonetheless "explain the consideration given to these decisions in the notice of decision for hearing cases and in the case record for initial and reconsideration cases." SSR 6-03p. Here the ALJ did precisely that. He addressed the VA determination and explained the consideration he gave it. The ALJ's reasoning for rejecting the VA determination was supported by substantial evidence. Furthermore, even assuming that the ALJ erred, Plaintiff has not established that he was harmed by this error. Shinseki v. Sanders, 129 S.Ct. 1696 (2009); Garner v. Astrue, 2011 WL 2451723, *1, fn* (4th Cir. 2011)(unpublished opinion). For these reasons, this assignment of error is without merit.

12

**The ALJ properly classified Plaintiff as an "individual closely approaching advanced age"**

Finally, Plaintiff asserts that the ALJ "incorrectly applied the Medical Vocational Guidelines by stating that, because [Plaintiff] was 50 years old on the application date, he was defined as an individual closely approaching advanced age." (DE-17, pg. 19). Plaintiff turned 55 almost seven months after the ALJ's decision. (Tr. 39, 238). Thus, the ALJ correctly classified Plaintiff as an individual closely approaching advanced age under 20 C.F.R. 404.1563 (Tr. 237). *See*, Paschall v. Astrue, 2011 WL 1750757, *11 (E.D.N.C. May 6, 2011) (finding that claimant's birthday nine months after the date of the ALJ's decision did not present a borderline age situation). Although age categories should not always be applied mechanically, the instant matter does not present a "borderline situation." 20 C.F.R. § 404.1563(b). For these reasons, this assignment of error is without merit.

**Conclusion**

For the aforementioned reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-14) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-24) be GRANTED, and that the final decision by Defendant be AFFIRMED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Thursday, August 09, 2012.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE